UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE PRICE,

              Petitioner,                  Criminal Case Number 15-20472

v.                                                  Civil Case Number 17-11365
                                                        Honorable David M. Lawson
UNITED STATES OF AMERICA,

              Respondent.

_____/

## **OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE**

Petitioner Tyrone Price was charged in several counts of a multi-count second superseding indictment, along with eight co-defendants, with racketeering, attempted murder in aid of racketeering, and discharging a firearm in furtherance of a crime of violence. He pleaded guilty under a plea agreement with the government and was sentenced to 140 months in prison. He did not appeal his conviction or sentence.

Price filed a motion to vacate his sentence under 28 U.S.C. § 2255, raising several claims that his trial counsel was ineffective during the pretrial and plea proceedings. He later filed a supplemental motion raising additional claims concerning the validity of his guilty plea, and a second supplement to his motion contending that a new Supreme Court decision entitled him to relief. The government responded, and the Court held an evidentiary hearing where Price's trial counsel testified. Price's claims of procedural defects in the proceedings are foreclosed by his guilty plea. The recent Supreme Court cases he relies on do not afford him relief. And the record shows that his attorney's performance was not deficient. Therefore, the Court will deny the motion to vacate Price's sentence.

I.

Price was a member of a street gang known as the Vice Lords. In May 2015, Price and several other Vice Lord members attempted to kill a former gang member in Detroit. Several of the Vice Lords drove to a residence and one fired on the victim and other family members with an assault weapon. Some were injured. No one was killed.

Price was not the shooter, but he helped plan the assault and traveled to the scene with other gang members. He was charged in the firearm count as an aider and abettor. Attorney Michael Rataj represented Price. After a round of pretrial motions, he negotiated a plea agreement in which the government agreed to dismiss a racketeering count and two assault counts in exchange for Price's guilty plea to two other assault charges and a firearm count. The agreement capped Price's sentencing exposure at 171 months. After an extensive plea colloquy, the Court accepted Price's guilty plea on January 28, 2016. The plea agreement was accepted at sentencing on August 10, 2016, where Price received a custodial sentence below the bottom of the advisory guideline range.

In his motion to vacate sentence and supplements, Price raises a number of arguments. *First*, he contends that his trial counsel was ineffective by (1) improperly advising him to plead guilty; (2) failing to investigate and to locate or present witnesses to support an alibi defense; (3) failing to investigate Price's mental health history and to file a motion to determine his competency; (4) failing to file a motion challenging the indictment; (5) failing to file a motion to suppress evidence seized as a result of a search warrant; (6) failing to obtain or to file a motion for

disclosure of evidence relating to the testimony of several witnesses before the grand jury; and "misadvising" him at the guilty plea hearing.

*Second*, in a supplement to his motion, Price added a number of claims of procedural defects in the proceedings prior to entry of his guilty plea, arguing that: (1) the evidence presented by the government showed that only three persons were shot, not four as the government claimed; (2) the term "carry" should have been stricken from the indictment where it charged "use and carry" of a firearm; (3) evidence obtained from search of 16005 Kramer should have been suppressed because the supporting affidavit did not supply sufficient information to show probable cause; and (4) a photograph found on the internet should not have been admitted as evidence. Price also contends that the prosecutor engaged in misconduct (1) during the questioning of a witness, Jazmin Diggs, before the grand jury, by "coerc[ing] her to support the credibility of a witness," "misstat[ing] the facts [during] cross-examination," and "lead[ing] the witness to things that [she] had not said"; and (2) calling an "out of state" witness, Keisha Norfleet, to testify before the grand jury.

*Third*, Price included in his supplemental motion extensive recitations of the elements of various crimes under certain federal statutes, and a general statement of case law relating to unduly suggestive eyewitness identification procedures, but his briefing did not include any developed arguments relating to those points of law.

*Fourth*, Price contends that his sentence was improper because (1) a 10-year mandatory minimum sentence provision should not have applied because the Court determined that the defendant did not "discharge" a firearm; and (2) RICO conspiracy and assault with a dangerous

weapon are not "crimes of violence" under 18 U.S.C. 924(c) (citing *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015)).

The government opposes Price's motion and his supplements. It filed an affidavit from attorney Rataj, which is consistent with his hearing testimony. Rataj says that he did investigate the petitioner's claim of an alibi defense, but he found that it was not corroborated by the witness whom he contacted. Price had told him that he was at a physical therapy appointment on the day of the shooting. Rataj explained that called the doctor's office and learned that Price indeed had an appointment that day, but it was at 2:45 p.m. and Price was in the office for no more than 15 minutes. The doctor's office was not far from the shooting scene, and the shooting occurred at 6:00 p.m. When he informed Price of what he had found, Price did not tell him about any other witnesses that might support his alibi.

Rataj also said that he never had any indication from the contacts with his client that brought his mental status into question, and Price never raised the issue with him. Rataj explained that in his 28 years of practice, he had represented several clients with mental health problems. He stated that he had "numerous" in-person encounters with his client — at least ten — and saw no "competency issues" with him. They had "lengthy conversations wherein [Price] exhibited a grasp of his legal situation and the facts underlying his case." Rataj "saw no need to investigate his mental health nor raise it as an issue with the Court."

Rataj believed that the evidence against his client was strong and he could not prevail at a trial. He knew that the government could prove that Price was present at the shooting scene and drove the vehicle. Rataj negotiated the best plea deal he could with the prosecutor, and then he

visited with his client in custody and went over the written Rule 11 plea agreement "line by line." When discussing options, Rataj said that the subject of a bench trial never came up. A major point of concern, though, was that all the co-defendants were pleading guilty, and the government had cooperating witnesses that places Price at the scene.

Price offered no evidence at the hearing.

II.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or the conviction or sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998). However, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

A. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

To establish that his attorney's performance was deficient, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

One way of establishing defective performance is to show that defense counsel missed a meritorious argument under the controlling law. However, the failure to file a meritless motion or raise a groundless objection does not constitute defective performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123 (reiterating that the "[Supreme] Court has never required defense counsel

to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

1. Alibi Defense

Rataj's efforts to investigate Price's purported alibi defense were reasonable under the circumstances. Rataj testified credibly that he contacted the doctor's office, and a witness that he spoke with gave information that negated the defense rather than corroborated it. Price's new attorney argued at the hearing that Rataj could have done more, such as cast about for additional witnesses, or approach his client's assertions with less skepticism. But there is no suggestion in the record or from present counsel that any new, helpful information would be forth coming, and Price's new attorney has offered no prospect that any was there to be found.

The decision on how far to pursue the investigation was Rataj's. The Court will "not second-guess counsel's strategic decisions, and should presume that counsel's conduct is reasonable." *Morris v. Carpenter*, 802 F.3d 825, 843 (6th Cir. 2015) (citing *Strickland*, 466 U.S. at 689; *Jackson v. Bradshaw*, 681 F.3d 753, 760 (6th Cir. 2012)). The decision not to investigate further into a defense that, after an initial inquiry, offered no realistic prospect of success was professionally reasonable. *Knowles*, 556 U.S. at 123.

Even without the presumption, the record supports the reasonableness of Rataj's strategic decision not to pursue a non-existent defense after making a reasonable inquiry into the facts. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation." *Strickland*, 466 U.S. at 690-91. The investigation here was thorough enough to pass muster in light of the meager facts proffered by the petitioner. The physical therapy sign-in sheet, which the prosecutor showed Rataj at the arraignment, does nothing to bolster Price's claim of deficient representation, since it states nothing more than his arrival time at the clinic. It offers nothing to corroborate his assertion that he was at the doctor for four hours. Price's assertion was contradicted by the statement made by the witness at the office that counsel spoke with. Nothing in the record suggests that any further investigation would have turned up any more helpful information that plausibly could have supported an alibi defense.

There was no deficient performance in Rataj's treatment of Price's initial claim of alibi.

## 2. Competency and Sanity

Price has not put forth any information, and the record certainly contains none, that should have caused his attorney to question his competency or sanity at any time before he entered his guilty plea. The only facts that Price offers to sustain this claim are that: (1) he received "counseling" for his "mental health" from 2000 approximately through 2014; (2) he has a "history of depression, anxiety, and suicidal ideations"; (3) he was prescribed two medications to address his mental issues, which he was taking (or was supposed to be taking) at the time of his plea hearing (Sytoline and Trazadone); and (4) that without one of his medications he would become "stressed and depressed," and that the other medication was "a sleeping med." Most of those circumstances were adduced at the plea hearing during the Court's inquiry. The defendant's sentencing memorandum prepared by counsel also suggested that Price was more or less illiterate, but at the plea hearing the defendant represented to the contrary that he could read, write, and speak English.

"In assessing competence, the relevant question is whether the defendant's 'mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" *Hill v. Anderson*, 881 F.3d 483, 510-11 (6th Cir. 2018) (quoting *Indiana v. Edwards*, 554 U.S. 164, 170 (2008)). "If the defendant's mental condition meets this description, the courts may not try him."

Here, looking at the record most favorably to Price, none of the circumstances cited, either alone or together, raise any credible question about his ability to understand the nature of the proceedings, to consult with his counsel, or assist in his defense. Price "cites no authority for the proposition that trial courts should equate illiteracy to incompetence," and even overt signals of a defendant's intellectual limitations such as a limited vocabulary are not sufficient to make the need for a competency inquiry apparent to the Court or defense counsel. *Hill*, 881 F.3d at 513.

Rataj's testimony also confirmed that he consulted with Price about the case, explained the elements of the crimes to him, and the legal concept of accomplice liability, and gave him a case to read. Rataj said that he never had any indication that his client was unable to communicate fully or understand his advice or the factual and legal premises for it. The Court also communicated with Price at his plea and sentencing hearings, inquiring extensively into his background, the case facts, and his understanding of his rights and the consequences of his plea. Price repeatedly affirmed that he understood the nature and consequences of the proceeding. *See ibid.* ("[T]he trial court had at least two opportunities to observe Hill and interact with him directly, and these incidents did not suggest that Hill was incompetent to stand trial under *Pate*, *Drope*, or the more recent Supreme Court case, *Edwards*."); *United States v. Santiago Miranda*, 654 F.3d 130, 139

(1st Cir. 2011) ("[The] district court was not required to hold [an] evidentiary hearing where [the] defendant made [an] 'eleventh-hour claim . . . that[ ] his emotionally-depressed state affected the voluntariness of his plea,' and [the] court could rely on its own contrary impressions of defendant, where [the] 'record presents no reason to doubt [defendant]'s competence to plead.'" (quoting *United States v. Browne*, 318 F.3d 261, 265 (1st Cir. 2003)).

For similar reasons, nothing in the record suggests that the Price's sanity ever was called into question during the pre-plea proceedings. "Under the [federal Insanity Defense Reform Act (IDRA), 18 U.S.C. § 17(a)], to prove insanity — an affirmative defense that absolves a defendant of liability even if the defendant is factually guilty — a defendant must 'show, by clear and convincing evidence, that he was unable to appreciate the nature and quality or the wrongfulness of his acts.'" *United States v. Odeh*, 815 F.3d 968, 980 (6th Cir. 2016) (quoting § 17(a)). Nothing in the record suggests that Price was unable to appreciate the nature and quality of the wrongfulness of the assault in which he participated. Price's detailed recitation of the facts of the crime showed that he fully understood what he was doing, and the wrongful purpose of his acts aimed at intimidating persons who purportedly had violated the Vice Lord's unwritten code.

Finally, although certainly not dispositive, Price never raised the issue of either his competency or his sanity with his attorney. That further bolsters the conclusion that Rataj had no basis to make any further inquiry into Price's mental health than actually was made in order to present the circumstances outlined in the sentencing memorandum (which, itself, shows that at least a somewhat searching inquiry *was* made by counsel). The decision not to investigate a

(1st Cir. 2011) ("[The] district court was not required to hold [an] evidentiary hearing where [the] defendant made [an] 'eleventh-hour claim . . . that[ ] his emotionally-depressed state affected the voluntariness of his plea,' and [the] court could rely on its own contrary impressions of defendant, where [the] 'record presents no reason to doubt [defendant]'s competence to plead.'" (quoting *United States v. Browne*, 318 F.3d 261, 265 (1st Cir. 2003)).

For similar reasons, nothing in the record suggests that the Price's sanity ever was called into question during the pre-plea proceedings. "Under the [federal Insanity Defense Reform Act (IDRA), 18 U.S.C. § 17(a)], to prove insanity — an affirmative defense that absolves a defendant of liability even if the defendant is factually guilty — a defendant must 'show, by clear and convincing evidence, that he was unable to appreciate the nature and quality or the wrongfulness of his acts.'" *United States v. Odeh*, 815 F.3d 968, 980 (6th Cir. 2016) (quoting § 17(a)). Nothing in the record suggests that Price was unable to appreciate the nature and quality of the wrongfulness of the assault in which he participated. Price's detailed recitation of the facts of the crime showed that he fully understood what he was doing, and the wrongful purpose of his acts aimed at intimidating persons who purportedly had violated the Vice Lord's unwritten code.

Finally, although certainly not dispositive, Price never raised the issue of either his competency or his sanity with his attorney. That further bolsters the conclusion that Rataj had no basis to make any further inquiry into Price's mental health than actually was made in order to present the circumstances outlined in the sentencing memorandum (which, itself, shows that at least a somewhat searching inquiry *was* made by counsel). The decision not to investigate a

(1st Cir. 2011) ("[The] district court was not required to hold [an] evidentiary hearing where [the] defendant made [an] 'eleventh-hour claim . . . that[ ] his emotionally-depressed state affected the voluntariness of his plea,' and [the] court could rely on its own contrary impressions of defendant, where [the] 'record presents no reason to doubt [defendant]'s competence to plead.'" (quoting *United States v. Browne*, 318 F.3d 261, 265 (1st Cir. 2003))).

For similar reasons, nothing in the record suggests that the Price's sanity ever was called into question during the pre-plea proceedings. "Under the [federal Insanity Defense Reform Act (IDRA), 18 U.S.C. § 17(a)], to prove insanity — an affirmative defense that absolves a defendant of liability even if the defendant is factually guilty — a defendant must 'show, by clear and convincing evidence, that he was unable to appreciate the nature and quality or the wrongfulness of his acts.'" *United States v. Odeh*, 815 F.3d 968, 980 (6th Cir. 2016) (quoting § 17(a)). Nothing in the record suggests that Price was unable to appreciate the nature and quality of the wrongfulness of the assault in which he participated. Price's detailed recitation of the facts of the crime showed that he fully understood what he was doing, and the wrongful purpose of his acts aimed at intimidating persons who purportedly had violated the Vice Lord's unwritten code.

Finally, although certainly not dispositive, Price never raised the issue of either his competency or his sanity with his attorney. That further bolsters the conclusion that Rataj had no basis to make any further inquiry into Price's mental health than actually was made in order to present the circumstances outlined in the sentencing memorandum (which, itself, shows that at least a somewhat searching inquiry *was* made by counsel). The decision not to investigate a

purported lack of competency or insanity defense with no apparent basis in fact cannot be deemed professionally deficient.

### 3. Advice to Accept Plea

Price asserts that his guilty plea was made over the advice of counsel that "there is no bench trial in federal court." Certainly, "the negotiation of a plea bargain is a critical stage in the prosecution to which the right to effective assistance of counsel attaches." *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015); *see also Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970))). But here Price's claim has no merit, because the record reveals that the Court gave a thorough explanation, on the record at the plea hearing, about the petitioner's right to a jury trial and all of the accompanying procedural protections that a trial would afford him. Price acknowledged on the record that he understood the nature of a jury trial and his right to have one, and that he wanted to waive that right and plead guilty instead.

Moreover, Rataj asserted that he never told Price that there were no bench trials in federal court. Of course, Price had no unilateral right to demand a bench trial. *See* Fed. R. Crim. P. 23(a); *Patton v. United States,* 281 U.S. 276, 312 (1930), *abrogated on other grounds by Williams v. Florida,* 399 U.S. 78 (1970) (recognizing that "before any [jury trial] waiver can become effective, the consent of government counsel and the sanction of the court must be had"). But even if the advice about the unavailability of a "bench trial" was professionally deficient, the petitioner cannot show that he was prejudiced by the alleged misinformation about the availability of any right that he forfeited by pleading guilty. *See Loden v. McCarty*, 778 F.3d 484, 500 (5th Cir. 2015) (citing

*Missouri v. Frye*, 566 U.S. 134, 142 (2012) ("Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the State substantial protection against later claims that the plea was the result of inadequate advice.")).

Price's contention that his attorney wrongly advised him to plead guilty also is unfounded. The plea deal resulted in the dismissal of two separate assault charges that each could have carried additional consecutive 20-year terms. Rataj laid all that out for Price so he could make his own decision. Rataj's expressed opinion that Price should accept the deal — and limit his sentencing exposure — was eminently prudent and reasonable. Price has offered nothing to explain how that advice was professionally unreasonable or how he was prejudiced by it. Under the circumstances, giving any *other* advice probably would have been unprofessional, given the substantial evidence suggesting a near certainty of conviction at trial.

### 4. Other Matters

Price also argues that trial counsel was ineffective by (1) failing to file a motion challenging the indictment; (2) failing to file a motion to suppress evidence seized as a result of a search warrant executed at 16005 Kramer; and (3) failing to obtain or to file a motion for disclosure of evidence relating to the testimony of several witnesses before the grand jury (Jazmin Diggs, Keisha Norfleet, and Shamone Thomas). But Price has not offered any factual basis or developed argument to sustain those claims. He makes no effort to explain how the indictment was defective, other than by implying that the term "carry" should have been stricken from language charging "use and

carry" of a firearm. However, he plainly admitted at his plea hearing that his co-defendant Antonio Clark both "carried" and "used" a firearm during the assault in which Price admittedly participated. Plea Hr'g Tr. at 27-28 ("THE COURT: All right. When you drove Clark to the scene, Clark had an assault rifle, correct? THE DEFENDANT: Yes, your Honor. THE COURT: And did you know Clark intended to go take a shot at Mr. — at V.T.? THE DEFENDANT: Yes, your Honor. . . . THE COURT: And the firearm was actually discharged, was it not? THE DEFENDANT: Yes, your Honor.").

Price's arguments relating to the failure to file a motion to suppress and failure to procure grand jury testimony by three witnesses similarly are undeveloped and without merit, because Price has not offered any facts, argument, or legal authority to explain how the search warrant in question was defective or how his defense could have been aided by any testimony given by the three witnesses that he named.

\* \* \* \* \*

Price has not demonstrated that his attorney performed in a deficient way. Price did not receive ineffective assistance of counsel.

### B. Pre-Plea Procedural Defects

The claims raised in the petition premised on various purported pre-plea procedural defects in the proceedings all are precluded because the review of a conviction upon a guilty plea is limited to whether the plea was knowing, intelligent, and voluntary. *United States v. Pickett*, 941 F.2d 411, 417 (6th Cir. 1991) (noting that a conviction by "guilty plea bars any subsequent non-

jurisdictional attack on the conviction, even if the attack is a constitutional one"). In this case the record of the plea hearing amply establishes that it was.

A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. Price was 26 years old at the time of his guilty plea and had prior experience with the criminal justice system. There is no evidence that he suffered from physical or mental ailments that would have impaired his ability to understand the criminal proceedings or the nature of his plea. Price was represented by legal counsel and conferred with counsel during the plea process. The Court advised Price of his trial rights and the fact that he would be giving up those rights by pleading guilty. The Court discussed the charges and the terms of the plea and its direct consequences, including the parties' agreed-upon sentencing guideline range of 161 to 171 months imprisonment. Price stated that he understood the terms of the plea agreement, he was pleading guilty of his own free will, and he had not been coerced, threatened, or promised anything else to induce his plea. He has not offered any factual basis or legal authority to support any conclusion that he did not enter his plea knowingly, intelligently, and voluntarily.

All of his claims of pre-plea procedural defects therefore are foreclosed.

### C. Sentence Enhancements

In his second supplement, Price argues that a 10-year mandatory minimum sentence for "discharge" of a firearm should not have applied and that the crime of assault with a deadly weapon is not a "crime of violence." Both arguments are frivolous.

When Price pleaded guilty to discharging a firearm during a crime of violence, violating 18 U.S.C. § 924(c)(1)(A)(iii), he admitted during his plea colloquy that the weapon brought by his co-defendant Clark was fired at the victims during the assault. The Court never made any finding that the weapon was not discharged during the attack; the record shows only that Price himself did not discharge a weapon. That fact, however, is immaterial to the penalty for his crime since he was convicted of aiding and abetting the attack. It was undisputed that the weapon was not fired by Price's own hand; but that does not preclude aiding and abetting liability where the defendant admitted that he was present during and aided or encouraged the assault, and that he knew his co-defendant brought a gun intending to use it to assault the victims. *See United States v. Nicholson*, 716 F. App'x 400, 411 (6th Cir. 2017) ("To be convicted of violating § 924(c) under an aiding and abetting theory, a defendant must have advance knowledge that the plan would include a firearm. This advance-knowledge requirement does not mean that a defendant must know in advance that his confederate will actually use the gun. Instead, the government must show that the defendant decided to join in the criminal venture with full awareness of its scope . . . including its use of a firearm." (citations and quotations omitted)); *United States v. Mann*, 7 F. App'x 424, 426 (6th Cir. 2001) ("Mann suggests that his guilty plea was in error because he did not carry the weapon himself. In fact, it is undisputed that he was waiting with the getaway car in Ridgely while the bank was being robbed in Elbridge. However, the defendant pled guilty to aiding and abetting a violation of 18 U.S.C. § 924(c). This Circuit on numerous occasions has upheld convictions based on aiding and abetting others to violate section 924(c).").

The undeveloped implied claim that section 924(c) is unconstitutionally vague under the holding of *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015), also is has no merit. In *Johnson*, the Supreme Court struck down the so-called "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), which defined the phrase "violent felony" as any felony that "'involves conduct that presents a serious potential risk of physical injury to another.'" 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). In its recent decision in *Sessions v. Dimaya*, --- U.S. ---, 138 S. Ct. 1204 (2018), the Court, applying the rule announced in *Johnson*, held that similar language in 18 U.S.C. § 16, which was incorporated by reference in certain provisions of the Immigration and Nationality Act, also was unconstitutionally vague. *See* 18 U.S.C. § 16(b) (defining the phrase "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.").

Neither of those decisions calls into question the constitutional soundness of Price's firearm conviction in this case. The predicate offenses that supported the section 924(c) conviction in this case were the two convictions for assault with a dangerous weapon in aid of racketeering, contrary to 18 U.S.C. § 1959(a)(3), charged in counts three and five of the second superseding indictment. As noted above, Price pleaded guilty to those offenses. Those crimes categorically qualify as "crimes of violence" under the so-called "elements clause" of section 924(c). *See* 18 U.S.C. § 924(c)(3)(A) (defining "crime of violence" as any "felony offense [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). The unconstitutional "residual clause" played no role in Price's sentence.

It is well established that assault with a dangerous weapon categorically qualifies as a "crime of violence" under the elements clause, because "[o]ne cannot assault a person, or jeopardize his or her life with a dangerous weapon, unless one uses, attempts to use, or threatens physical force." *United States v. Johnson*, 899 F.3d 191, 204 (3d Cir. 2018), *cert. denied*, No. 18-6499 (U.S. Dec. 10, 2018); *see also United States v. Harris*, 853 F.3d 318, 321 (6th Cir. 2017) ("When a felony must be committed with a deadly weapon and involves some degree or threat of physical force, it is a crime of violence under the elements clause. Michigan felonious assault meets that threshold because there is no way to commit it without intentionally attempting or threatening physical force against another with a dangerous weapon." (citations omitted)); *DeSilva v. United States*, 740 F. App'x 101, 102 (7th Cir. 2018) (holding that attempt to commit assault with a dangerous weapon in aid of racketeering, contrary to 18 U.S.C. § 1959(a)(3), "was properly considered a crime of violence under § 924(c)(3)(A)"); *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018) ("[W]e agree with all of the circuits to have addressed the issue, and hold that Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" (quoting 18 U.S.C. § 924(c)(3)(A)).

### III.

Price has not shown that he is entitled to relief from his convictions or his sentence.

Accordingly, it is **ORDERED** that the petitioner's motions to vacate his sentence [dkt. #350, 366] are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: December 13, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on December 13, 2018.

                s/Susan K. Pinkowski
                SUSAN K. PINKOWSKI