UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Case Number 15-20472

v.                                       Honorable David M. Lawson

TYRONE PRICE,

        Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Tyrone Price has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. The government concedes that the request for release has been administratively exhausted. However, it argues that release is not favored because Price has failed to show that he suffers from any health condition that comprises a significant risk factor for exposure to the coronavirus disease. The government further argues that, even if he does qualify, he should not be released because the violent nature of his crimes prove that he is a danger to the community. Although Price is confined at FCI Manchester in Kentucky, where the Bureau of Prisons (BOP) has done a poor job of confining the spread of COVID-19, he has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his diagnosed medical conditions, even though one of his observed health factors (obesity) does comprise a recognized risk factor for complications from coronavirus infection. And even if he has made an adequate showing of elevated medical risk, other relevant considerations such as his extensive violent criminal history and the serious danger to the community weigh against early release. The motion will be denied.

I.

Price pleaded guilty to two counts of assault with a dangerous weapon in aid of racketeering and one count of using or carrying a firearm during and in relation to a crime of violence. He was sentenced to 20-month concurrent prison terms for the assault crimes and a consecutive term of 120 months for the firearm offense. With credit for his extensive time spent in pretrial detention, the defendant has served approximately 61 months or nearly 44% of the total 140-month sentence. He is serving his sentence at FCI Manchester, in Manchester, Kentucky, which is a medium security facility that houses around a thousand inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on July 12, 2025. Price is 31 years old.

On July 8, 2020, Price filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The Court appointed counsel and set deadlines for filing of a supplemental motion by counsel and a response by the government. Counsel filed a supplement on September 2, 2020. In his motion, Price argues that he is qualified for release based on at least two medical conditions that have been identified as placing him at elevated risk of complications from a COVID-19 infection. The government has filed a response opposing the motion on the merits.

The most recent data disclosed by the BOP indicates that there are 44 active coronavirus case among inmates and eight among staff at the Manchester facility, and 83 inmates and nine staff who previously were diagnosed with the disease but now have recovered. Reports indicate that no inmates or staff have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. §

3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted). The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

Under section 3582(c)(1)(A), the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, the "reduction is consistent with applicable policy statements issued by the Sentencing

Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government offers several reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Price has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The defendant's crimes in this case were extremely serious. He was a long-term member of the Vice Lords gang who, on this occasion, drove several heavily armed fellow gang members to a family home where they proceeded to mount an indiscriminate shooting assault, which resulted in injuries to several of the residents. After the attack, Price proudly promoted his position as an

enforcer for the gang in social media posts depicting him brandishing a pistol and assault rifle. His criminal history spans 15 years, and he previously was convicted for illegal possession of guns and assault crimes (including other shootings), in 2006, 2007, and 2009. He has continued to procure, carry, and use weapons illegally despite the fact that he unquestionably is barred from doing so by his prior felony convictions. Those circumstances all suggest that the defendant would, if released, pose a very serious danger to the community.

The defendant apparently has done well enough in a prison setting and has undertaken efforts to better himself. He also appears to have avoided any citations for serious misconduct. However, commendable though Price's conduct in prison has been, it does not alter the historical fact that the Court imposed a sentence that was not greater than necessary to achieve congressional goals. Reducing that sentence to less than half of the original term would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary it would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who repeatedly has shown that he has not been deterred from committing violent crimes by the punishments imposed for his previous convictions.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting a reduction in sentence.

To establish extraordinary and compelling reasons for the relief he requests, Price points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. He documents several medical conditions, but his principal contention is that his asthma and obesity (BMI 31.6) are recognized medical risk factors. He argues that those conditions and others increase the risk to his health posed by the ongoing coronavirus pandemic.

The defendant also asserts that he suffers from anxiety, depression, lumbar lordosis and hammer toes, but he does not identify any of those as recognized risk factors.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk

factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  The defendant's age (31) does not put him in a high-risk category, but he correctly points out that other pertinent recognized risk factors include obesity and asthma.  *See* CDC, Risk Factors: People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  However, the defendant's assertion that he is at increased risk due to asthma is not supported by the medical records he has submitted, which only show that he was treated between 2005 and 2014 for "allergic rhinitis" and "airway lability."  None of those records, or the more recently generated prison medical notes, indicate any diagnosis or treatment for any form of asthma.  *See* Medical Reports Aug. 5, 2005 through May 5, 2014, ECF No. 499, PageID.2784-2797.  Those records disclose no indication that Price ever has been medicated for asthma, despite his assertion that he has had that condition since he was a teenager.  There also is no indication in the prison medical notes of any current diagnosis or prescription for asthma, although the defendant has been seen by prison doctors several times in recent months.  *See* Medical Reports dated Jan. 1, 2020 through July 17, 2020, ECF No. 493, PageID.2685-2716.

Nevertheless, the defendant also contends that his obesity is a recognized risk factor.  The government's response does not acknowledge or address the defendant's obesity.  Recent medical records indicate that Price is 6' 4" tall and at last observation weighed 263 pounds.  *See* Medical Reports dated July 7, 2020 and Jan. 2, 2020, PageID.2689, 2699.  Those values yield a calculated BMI of 32, and the current CDC guidance recognizes obesity (defined as having a BMI > 30) as a risk factor for serious consequences due to coronavirus infection.  Federal courts have recognized

obesity as posing sufficient medical risk to establish extreme and compelling circumstances weighing in favor of release, where the inmate is confined at a facility with an active COVID-19 outbreak. *United States v. Olawoye*, No. 15-00172, 2020 WL 4559816, at *4 (D. Or. Aug. 7, 2020) ("Even without the presence of other health conditions, obesity alone is the 'most significant risk factor, after only older age, for being hospitalized with Covid-19.' Further, the CDC has noted that, regardless of age, 'having obesity, defined as a body mass index (BMI) of 30 or above, increases . . . risk of serve illness from COVID-19.' Defendant has a body mass index of 31.9, which is classified as obese." (quoting Roni Caryn Rabin, Obesity Linked to Severe Coronavirus Disease, Especially for Younger Patients, The NY TIMES (Apr. 17, 2020) https://www.nytimes.com/2020/04/16/health/coronavirus-obesityhigher-risk.html; CDC Risk Factors, *supra*).

Published reports indicate that the probability of infection at FCI Manchester is significant, with the facility presently having 44 infected inmates, amid an ongoing outbreak in which 127 inmates and 17 staff have been infected. Moreover, the government's position that the defendant is at low risk is not reassuring considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had

been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward.").

Nevertheless, on similar facts this Court has declined to order the release of otherwise healthy and relatively young inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk. *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020) ("[I]t does not appear that the defendant's obesity is severe. In July 2019, he registered a BMI of about 31.5."); *United States v. Smith*, No. 16-20293, 2020 WL 4791226, at *4 (E.D. Mich. Aug. 18, 2020) ("The medical records indicate that Smith's BMI is slightly over 30, which qualifies as obese according to the CDC. Smith did not cite obesity as a reason he would be vulnerable to complications from COVID-19, probably for good reasons. He reduced his weight to register a BMI of 36.5 in March 2019 to a BMI of 30.7 in February 2020. He is 30 years old and otherwise relatively healthy. Despite the government's acknowledgement, the bases Smith cites to establish extraordinary and compelling reasons for a sentence reduction are not persuasive."); *but c.f. United States v. Edwards*, No. 17-20716 (E.D. Mich. Aug. 17, 2020) (granting motion for compassionate release by 51-year-old inmate with BMI of 47, hypertension, anemia, other pulmonary and coronary conditions, and severe immobility due to repeated surgeries, where further needed surgery could not be arranged due to movement restrictions).

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Price resides, either at home or in prison. He asserts that his risk

would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement. And Michigan has a significant number of confirmed COVID-19 cases.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, particularly in conjunction with the defendant's overall young age, decent health, and the presence of only one medical factor somewhat increasing his risk of serious complications. Price has not shown justification to reduce his sentence to time served.

III.

Price has exhausted his administrative remedies, but he has not demonstrated that compassionate release or a reduction in his prison sentence under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion and supplemental motion for compassionate release (ECF No. 481, 498) are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: September 10, 2020